## Commonwealth v. Gushinski.

*Game laws—Illegal fishing—Sunday—Act of fishing defined—Statutes—Reference to.*

1. The act of fishing as intended in State regulatory statutes means any attempt to remove fish from their water habitat. It begins when the device is put into the water, continues while it is in the water, and is consummated when the device is pulled out of the water with the fish captured; but consummation is not essential.

2. One who takes out of water a fishing device, as a net, though he does it on Sunday and others may have put the device in place on another day, is guilty of transgressing the Sunday fishing statute. (Act July 28, 1917, art. ii, § 10, P. L. 1215).

3. Where defendant has not so testified, there would be no presumption that he had withdrawn a net actuated by merciful intention to free the fish from imprisonment, and particularly where it was not shown that the fish were discontented or suffering from the confinement.

4. Where a prior proceeding is a nullity through want of jurisdiction in the magistrate, it will not necessarily present an obstacle to further prosecution.

5. Failure to state definitely the title and section of the statute violated is not fatal to the prosecution, where the Pamphlet Laws contain only one pertinent act passed on that date and where that act has only one section to which the accusation can be referred.

Appeal from summary conviction for fishing on Sunday. Q. S. Luzerne Co., June T., 1920, No. 430.

*D. A. Fell* and *Herman J. Goldberg*, for defendant.

FULLER, P. J.—In this case we have the same prosecutor, the same defendant, the same magistrate, the same accusation and the same fish involved in the case of Com. v. Gushinski, No. 324, June Term, 1920, which came to technical grief. With zeal undiminished by disaster, the fish warden has renewed his attack upon the evil-doer: *Fiat justitia, ruat coelum.*

On hearing of this appeal, the following facts were established:

1. On Sunday, July 18, 1920, the defendant was caught red-handed by the watchful warden and his co-adjutor in the very act of drawing from Raub's Pond, in Lake Township, a net containing two perch and one catfish. These

Commonwealth *v.* Gushinski.

fish, we may observe in passing, were too diminutive to make their confiscation a motive for official activity.

2. The net had been placed some days before July 18th by some undisclosed malefactor, possibly the proprietor of the pond, and the defendant on that day merely pulled it up, with the result aforesaid.

3. For this identical act, the defendant was convicted in a former magisterial proceeding, which, on appeal, was reversed for want of jurisdiction on the ground of fatal defect in the information.

The learned counsel for defendant now urge the following grounds for reversal of this later judgment, viz.:

(1) The defendant did not fish on Sunday by merely pulling up a net which had been placed on another day.

(2) The legal presumption of innocence and a reasonable doubt, in the absence of proof showing when the fish actually entered the net, warrant the inference that they had entered on a prior day, and, if so, their rescue on Sunday from a watery grave was an act of mercy, permissible even on that holy day.

(3) The proceeding is barred by the judgment in the prior proceeding.

(4) The information does not disclose where it was taken nor the township in which the magistrate officiates.

(5) Nor does it specify the title or section of the statute whose violation is alleged.

1. The first ground has the merit of ingenious novelty, having never before been seriously urged, or, if urged, never decided, in any case brought to our attention. Notwithstanding a superficial appearance of frivolity, the proposition should not be treated with ridicule. It calls for a serious answer to the question whether a person can properly be said to fish when he does no more than pull out of the water a device by which fish are or may be restrained of their liberty. This involves a definition of fishing, and in the light of our personal experience, extended over half a century, we define it to be a human effort, successful or unsuccessful, by any device, to remove from water the piscatorial denizen thereof, a performance demanding patience, involving skill, accompanied by profanity and usually followed by mendacity. The operation begins the moment that the device, for example, a hook or a net, enters the water, continues all the time it is in the water, and is consummated when it brings the denizen from the water. The consummation is not essential to the definition at all, for the operator is fishing when he drops the hook or places the net in the water, fishing while he leaves the device in the water, and still fishing when he pulls it out, regardless of results. The three steps in the performance, though connected in fact, are not legally joint but severable. This being so, the man who pulls the device out is fishing, though another man has put it in; and likewise fishing on Sunday when he pulls it out on that day, though it was put in on Saturday. Now, if the consummation be not essential to the definition, so that a man is fishing when he merely puts the unsuccessful device in, *a fortiori*, must he be fishing when he pulls the successful device out. *Qui sentit commodum sentire debet et onus,* and *nemo allegans suam turpitudinem audiendus est;* hence, it would be irrational for the man who actually catches the fish to say he is not fishing. On this argument, if two men use the same device, for example, a net, which one of them sets and then departs and the other man pulls out the net with fish therein, neither of them has been fishing, a palpable *reductio ad absurdum.* The argument is only available as a defense if the man who pulls up the net is exclusively actuated by a desire to remove the device without fish; in other words,

has no intention nor expectation of bringing out fish with the device. This, however, is not urged in the present case, and the defendant frankly admits both the intention and the expectation, although he protests it would have been otherwise if he had known in advance the diminutive size of these particular fish.

Overruling, therefore, the first defense, we address ourselves to the second.

2. It is claimed that defendant may have been actuated by the merciful intention to free the fish from the pains of imprisonment, and, if so, this inference should be drawn in his favor on the principle of reasonable doubt and presumptive innocence. This contention, like the first, should not be summarily dismissed on a superficial appearance of foolishness. It deserves, and we have accorded, thoughtful consideration, which leads to these conclusions:

(1) The defendant, though competent, has not testified that he was thus actuated, but the contrary, and, therefore, with the assistance of inherent probability, we are thoroughly convinced in fact, beyond a reasonable doubt, that in pulling those fish from their native element into a cruel world, exposed to the possible piscatorial appetite of the officials, he was not actuated by any sentiment of mercy whatever.

(2) A consideration equally fatal to the plea is that these fish were not suitable objects of mercy at all, nor could they have possibly been regarded as such by the defendant. They were not seeking to escape, but accepted the situation in perfect contentment. They suffered no pain of body or mind. Indeed, we are advised by naturalists that fish, owing to lack of adequate sensory equipment, are physically and mentally incapable of feeling pain, and that even when gasping in the throes of apparent agony are really not suffering at all. This thought may console the tender-hearted fisherman who has occasion to pull out a hook swallowed by a fish. So we overrule the second defense.

3. Inasmuch as the prior proceeding was a nullity for want of jurisdiction, and was so decided, there has been no prior adjudication which can possibly operate as an obstacle to the present proceeding, and so we overrule the third defense.

4. If the statute required the prosecution to be brought before any particular magistrate, for example, the justice of the township in which the pond is located, we would think that the information should show upon its face this jurisdictional requirement; but the statute expressly enables the prosecution to be brought before any justice of the county, and, consequently, we overrule the fourth defense, suggesting, however, that it is always foolish for magistrates to risk reversal on objections which might be easily avoided with a little care.

5. A similar suggestion is proper concerning the fifth defense, namely, that the information fails to state the title and section of the statute violated. It merely specifies "the Act of Assembly approved the 28th day of July, A. D. 1917," a very loose form of averment; but, inasmuch as the Pamphlet Laws of that year contain only one pertinent act approved on that date, and inasmuch as that act contains only one section to which the present charge can possibly be referred, we allow our intelligence to supply the deficiency.

Our treatment of this case has been exhaustive because we have begun to weary of it and wish to end it here and now. The officials at last are justified, the magistrate has achieved the miracle of returning a record, which, if not perfect, is at least passable, astute evasion of punishment has reached its limit, the perpetrator of that crime, July 18th, is brought to justice, those

pitiful little fishes so ruthlessly routed from their quiet abode on the holy day of rest are avenged, the Christian Sabbath is restored to its pinnacle of strict observance against the subtle Mephistophelian argument of private property, the private pond must abjure the protection of its supposed prerogative to break the Fourth Commandment, and the judgment is affirmed.

From Frank P. Slattery, Wilkes-Barre, Pa.